UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENNIE ANDERSON, | : |
| | :   CIVIL ACTION NO. 3:20-0356 |
| **Plaintiff** | : |
| | :   (JUDGE MANNION) |
| v. | : |
| PAULA PRICE, *et al.*, | : |
| | : |
| **Defendants** | : |
| | : |

## MEMORANDUM

**I. BACKGROUND**

Plaintiff, Bennie Anderson, an inmate currently confined at the State Correctional Institution, Huntingdon ("SCI-Huntingdon"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds via an amended complaint. (Doc. 25). The named Defendants are Paula Price, Correctional Health Care Administrator; Mary Lou Showalter, retired Correctional Health Care Administrator; an Unknown Named SCI-Huntingdon Medical Director; and Four Unknown Named SCI-Huntingdon Doctors. Id. Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs. Id. For relief, he seeks compensatory and punitive damages. Id.

Presently before the Court is a motion to dismiss filed on behalf of Defendants Price and Showalter and a motion for more definite statement, filed on behalf of the Unknown Named SCI-Huntingdon Medical Director. (Docs. 36, 44). The motions are fully briefed and ripe for disposition. For the reasons set forth below, the Court will grant the motion to dismiss filed by Defendants Price and Showalter, as well as dismiss the complaint against the remaining Defendants.[1]

---

[1] Although Defendants Four Unknown Named SCI-Huntingdon Doctors and Unknown Named SCI-Huntingdon Medical Director did not join in the motion to dismiss filed by Defendants Price and Showalter, if a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. §1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding *in forma pauperis* and prisoners challenging prison conditions. See id. §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. §1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

## II. FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff states that he "suffers from congestive heart failure, hypertension, episodic, hypotension, kidney disease, cirrhosis of the liver, cardio-vascular-pulmonary disease, the swelling of both feet, the swelling of both legs and swelling of abdomen, the need for a pacemaker and other medical problems, all documented by the medical files at the prison." (Doc. 25). He claims that his "problem is a medical staff problem and the Defendants simply ignoring [his] serious medical, worsening problems, in an attempt to cut costs, and save spending funds on [his] serious medical problems" and "[his] medical problems worsened and worsened as a result," however, the Defendants "ignored [his] worsening condition and [he] suffered pain beyond belief, as a result." Id.

On May 27, 28, and 29, 2018, Plaintiff signed up for sick call "because [his] condition was getting worse," and "[f]inally SCI-Huntingdon rushed [him] to the hospital." Id. Plaintiff concludes that "today, as a result of the neglect of medical attention and treatment caused by the Defendants, [he] suffer[ed] permanent and serious medical problems, damage to [his] heart and cardiovascular system, liver damage, kidney damage, edema of [his] feet, legs and abdomen and a need for a pacemaker, etc." Id.

Plaintiff states that on July 2, 2018, he filed a grievance regarding his medical care. Id. On October 12, 2018, Defendant Price denied Plaintiff's grievance as follows:

> Your grievance dated 7/2/2018 has been received and reviewed. You attached to your grievance copies of medical records dating back to 2012. You report you have been seeing doctors for several years prior and since then for swelling of your legs, feet, abdomen, high blood pressure, dizzy spells, shortness of breath, being fatigued and your body full of fluid. You indicate this was years before 2012 and you were gaining weight. You indicate that you went to sick call on May 29, 2018 for pain in your chest, difficulty breathing, weight gain and hurting in your legs, feet, hands and abdomen that was so bad. You indicate when you saw the Doctor and he saw you were in bad shape and one of the nurses told him that there was something seriously wrong with you that she had never seen you in this condition before. You report the Doctor determined your blood pressure was dangerously high and your blood level was low. You indicate at the hospital they had to use an x-ray machine to find a vein because of your low pressure. They also told you they could not do anything further until you stabilized. You go on to describe having a cardiac cauterization. The Doctors at JC Blair Hospital told you that you had an enlarged heart and that you had congestive heart failure you then go into 2012. You then report seeing the Doctor here on 6/29/18 and being told if they had known you had congestive heart failure, they would not have given you a medication to slow your heart rate down. You are seeking to have the corrective heart surgery, which you were told by the Doctor here it could be done. You also request to be financially compensated for all the years you suffered from your heart deteriorating and the pain you went through and still are going through and nothing was done about it. You request to have a copy of all sick call slips and wish to see your medical records going back to 1/1/2000.
>
> Your treatment as far as consults for 2018 include the following:

>   2/16/2018 Ultrasound of your abdomen
>   4/10/2018 Ophthalmology
>   8/7/2018 Ophthalmology
>   4/18/2018 Echocardiogram
>   7/20/2018 Ultrasound
>   6/28/2018 Pulmonology
>   8/7/2018 Hematology
>   9/18/2018 Oncology
>
>   You are scheduled for another on site Oncology visit in the near future.
>
>   You are also scheduled for another on site ultrasound.
>
>   Concerning the previous documents, the ASAP consult would be for the soonest they could get the appointment. STAT would indicate right now. If you were a candidate for any type of corrective heart surgery would need to be determined by a cardiologist. The work up you have been receiving will determine the appropriate course of treatment for you. I do not see where heart surgery was recommended. You are being followed and have tests pending which will assist in determining your treatment plan.
>
>   Your grievance is without merit and is denied. You have been followed on chronic clinic and treated with medications. I have noted all your work up within 2018 for me to go back to 2012 or before is untimely. I am not able to provide you with copies of sick call slips. You may request via a request to staff to Ms. Jackson to review your medical records indicating the dates. I also cannot approve a surgery that would need to go through the consult process and a cardiologist would need to determine the necessity. No monetary award will be given via this grievance. Medical services are available to you 24/7 for emergencies and sick call otherwise. I apologize for the delay to this request due to circumstances beyond my control.

(Doc. 47-1 at 12, Initial Review Response).

Thus, Plaintiff filed the instant action in which he claims that Defendants were deliberately indifferent when they delayed and denied serious medical care to Plaintiff. Id.

Specifically, with respect to Defendant, Paula Price, SCI-Huntingdon Correctional Health Care Administrator from 2013-2018[2], Plaintiff alleges that Price denied care and approved of the administration of water pills which led to the swelling of the legs, knees, and abdomen of Plaintiff. (Doc. 25 at 8). These pills were recommended by Ms. Fawn, a Physician's Assistant, after a sick call request. Id. A few days following the sick call with Ms. Fawn, the Plaintiff was stopped by a nurse for swelling and blood on his legs. Id. Plaintiff went to medical to be examined by the nurse and Ms. Nalley, a Physician's Assistant. Id. Plaintiff was also examined by a doctor for the swelling of his legs. Id. Plaintiff wrote to Defendant Price requesting to see a specialist and Defendant Price explained that in order to see a specialist Plaintiff would need to see the Medical Director first. Id. At some point in time, the Medical Director, who is located at SCI-Smithfield, reviewed

---

[2] See Doc. 47-1 at 3.

Plaintiff's medical records and determined that Plaintiff did not need to see a specialist. Id.

As to Defendant, Mary Lou Showalter, the former Correctional Health Care Administrator at SCI-Huntingdon,[3] Plaintiff alleges that Defendant Showalter, at some unidentified time, reviewed various medical reports from doctors who had seen and treated him. (Doc. 25 at 9). Plaintiff further alleges that these records showed Plaintiff suffered from various medical conditions, including hepatitis C, cirrhosis, swelling of lower limb, swelling of abdomen, edema, heart enlargement, and obstruction. Id. Plaintiff further alleges that said reports indicated a need for immediate medical attention and Defendant Showalter failed to approve treatments and medical procedures. Id.

With respect to Defendant, Unknown Named SCI-Huntingdon Medical Director, Plaintiff alleges that the Medical Director "failed to provide the necessary treatments to the Plaintiff as would be needed to treat Plaintiff for the serious and numerous medical problems involved with the Plaintiff." (Doc. 25 at 11).

---

[3] Plaintiff's exhibits indicate that Defendant Showalter was the SCI-Huntingdon Correctional Health Care Administrator until 2013. (Doc. 47-1 at 3).

- 7 -

Finally, with respect to Defendant, Four Unknown Named SCI-Huntingdon Doctors, Plaintiff alleges that the Defendants "would make notes in the medical file, and do routine blood pressure checks, weigh [him], etc, but failed to provide [him] with adequate treatment and medical care concerning [his] worsening medical condition." Id.

For relief, Plaintiff seeks "actual damages of a minimum of one million dollars and punitive damages of one million dollars individually from each Defendant." Id.

### III. MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts

to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

## IV. Discussion

### A. Statute of Limitations

Defendants seek to dismiss Plaintiff's allegations in his amended complaint that pre-date the filing of his complaint by two years as barred by the statute of limitations. (Doc. 52 at 2). Specifically, in his amended complaint, (Doc. 25) his supplement filed in opposition to Defendant's motion for more definite statement (Doc. 49) and his exhibits in support thereof, id., Plaintiff complains of deliberate indifference to his medical treatment in 2012 through 2018. (Doc. 49).

Thus, Defendants argue that because the statute of limitations defect as to claims that occurred prior to February 28, 2018, two years prior to the filing date of February 28, 2020, is clear on the face of the amended complaint, it is appropriate to address the issue on a motion to dismiss.

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017). A claim brought pursuant to 42 U.S.C. §1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Kach v. Hose, 589 F.3d 626, 639 (3d Cir. 2009).

Anderson's claims arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. 42 Pa. Cons. Stat. Ann. §5524(2). The statute of limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the §1983 action. See Garvin v. City of Phila., 354 F.3d 215 (3d Cir. 2003); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991).

Plaintiff complains of inadequate medical treatment from 2012 through 2018. He did not file his original complaint until February 28, 2020. Because Plaintiff raises allegations of inadequate medical treatment that took place prior to February 28, 2018, the earliest possible date on which any allegation in the complaint could be deemed timely, his claims, that pre-date February 28, 2018[4] are barred by the two-year statute of limitations applicable to §1983 actions.

### B. Eighth Amendment Medical Treatment

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182

---

[4] These include all claims against Defendant Showalter, who Plaintiff claims was the Correctional Health Care Administrator from 2011-2013. (Doc. 49).

F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate

indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons."). The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's

medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

Plaintiff has failed to satisfy the deliberate indifference requirement of Estelle. Assuming without deciding that Plaintiff suffered from a serious medical need or condition, Plaintiff's pleadings clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Thus, Plaintiff's own admission averts any deliberate indifference with respect to treatment for his injury. Specifically, during the relevant 2018 time frame, Plaintiff was seen and treated by ophthalmology, cardiology, pulmonology, hematology, and oncology. (Doc. 47-1 at 12). Plaintiff was also being "followed on chronic clinic and treated with medications." Id. Finally, Plaintiff's own allegations reveal that "SCI-Huntingdon rushed [him] to the hospital" because his "condition was getting worse." Id.

With respect to Plaintiff's belief that he needed to see a specialist and Defendant Price recommended Plaintiff speak to the medical director concerning his request to see a specialist, who determined that there was no need to involve a specialist, such allegations, at best, demonstrate Plaintiff's disagreement with the type of treatment rendered. This is particularly so in

- 14 -

light of the fact that there are no allegations in the complaint that any Defendant intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouse, 12 F.3d at 197. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988). At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim against any of the named Defendants. See White, 897 F.2d at 108-110.

Further, "[a]s a general rule, non-medical prison officials are not deliberately indifferent under the Eighth Amendment simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor or because they deferred to the judgment of the medical staff treating the inmate." Durmer, 991 F.2d at 68. "CHCAs are 'undisputably administrators, [and] not doctors'." Williams v. Pa.

Dep't of Corrs., 2013 WL 3209283, at *4 (quoting Thomas v. Dragovich, 142 Fed. Appx. 33, 39 (3d Cir. 2005)). Defendant Price is "non-medical prison personnel in the sense that [she is] not responsible for directly rendering medical care." Id. "To state an Eighth Amendment claim of deliberate indifference against" a corrections healthcare administrator, Plaintiff must show that she "possessed actual knowledge or a reason to believe that 'prison doctors or their assistants [were] mistreating (or not treating)' him." Spruill, 372 F.3d at 236. The facts alleged in Anderson's amended complaint do not support such an inference against Price.

Plaintiff contends only that Defendant Price approved the administration of water pills as recommended by the physician's assistant at SCI-Huntingdon. (Doc. 25). In doing so, Defendant Price was acting in her role as a corrections health care administrator, making sure staff administered the treatment plan ordered by a medical professional. This is further supported by Plaintiff's allegation that Defendant Price recommended Plaintiff speak to the medical director concerning his request to see a specialist. Id. As stated by the Plaintiff, the medical director made the

determination that there was no need to involve a specialist. Id. Consequently, Plaintiff has failed to state a claim against Defendant Price.[5]

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

---

[5] Additionally, any claim Plaintiff may raise against Defendant Price predicated on her denial of Plaintiff's grievance, fails, as a prison official's participation in the grievance processes, including appeals, fails to establish the requisite personal involvement." Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ("Although the complaint alleges that [prison officials] responded inappropriately to [the plaintiff's] later-filed grievances about his medical treatment, these allegations do not establish [the prison officials'] involvement in the treatment itself.").

opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). In the instant case, the Court concludes that it would be futile to permit Plaintiff to file a second amended complaint because he has already been granted an opportunity to cure the deficiencies identified in his initial complaint and his amended complaint failed to cure such deficiencies.[6] See Jones v. Unknown DOC Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that when an inmate-plaintiff "has already had two chances to tell his story ... giving him further leave to amend would be futile") Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

---

[6] In addition to failing to cure the constitutional deficiencies, Plaintiff has failed to correct the identities of named Defendants. Neither Plaintiff's original complaint, (Doc. 1), amended complaint, (Doc. 25) supplement in opposition to Defendant's motion for more definite statement, (Doc. 49) nor Plaintiff's own motion for provide a more definite statement (Doc. 48), provide the identity of the Unknown SCI-Huntingdon Medical Director or the Four Unknown SCI-Huntingdon Doctors. Thus, no further leave will be granted.

**VI. CONCLUSION**

For the reasons set forth above, the Court will grant the motion to dismiss filed by Defendants Paula Price and Mary Lou Showalter. Defendants Unknown Named SCI-Huntingdon Medical Director and Four Unknown Named SCI-Huntingdon Doctors will be dismissed from the above captioned action pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 20, 2022**
20-0356-01